PHILLIP A. TALBERT
United States Attorney
CHRISTINA McCALL
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:22-CR-0123 DJC |
|---|---|
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S FORMAL PSR OBJECTIONS |
| v. | |
| DANIEL JOSEPH NOBLE, | DATE: September 26, 2024 |
| Defendant. | TIME: 9:00 a.m. |
| | COURT: Hon. Daniel J. Calabretta |

## I. INTRODUCTION

The United States respectfully submits its sentencing memorandum concerning Daniel Joseph Noble, who was an active participant in a private Kik group devoted to sharing videos of children engaging in sexually explicit conduct. While serving as a youth and collegiate water polo coach, Noble shared at least 16 videos of minors being sexually abused or otherwise engaging in sexually explicit conduct with the Kik group called yungvidschilddd. PSR ¶ 4.

In compliance with the plea agreement, the government requests that the Court impose a low-end Sentencing Guidelines sentence, followed by 10 years of supervised release, $20,000 in restitution, and order special assessments of $5,100.

//

## II. FACTUAL BACKGROUND

In the spring of 2022, an undercover Federal Bureau of Investigation (FBI) Special Agent discovered that Noble was an active participant in a private Kik group (yungvidschilddd) devoted to sharing videos showing children being sexually abused and exploited. PSR ¶¶ 10-12. Noble shared videos with the Kik group on at least five dates, and most of these videos depicted minors engaging in sexually explicit conduct. PSR ¶ 12; ECF No. 58 at 15. Some of the videos that Noble shared showed the sadistic treatment of children, with adults using foreign objects to penetrate prepubescent minors. ECF No. 58 at 15; PSR ¶ 12, 39. One video that Noble sent showed an adult woman anally raping a pre-pubescent girl, whose ankles were bound together with duct tape, with a foreign object, then repeatedly slapping the girl as she cried. PSR ¶ 12. Another video Noble shared showed an adult male anally raping a pre-pubescent girl with a foreign object, then ejaculating in her mouth and on her face. PSR ¶ 12. Further investigation revealed that Noble worked as a water polo coach for UC Davis and the associated youth water polo club. ECF No. 1 at 6.

Law enforcement agents executed a search warrant at Noble's residence. ECF No. 1 at 6. During an interview, Noble admitted participating in the private Kik group and having sent files of child sexual abuse material to its members. ECF No. 1 at 7. Investigation on behalf of the University of California at Davis found no evidence that Noble committed sexual misconduct against anyone associated with the university or associated athletic programs. PSR ¶ 20.

The files that Noble distributed depicted victims from nine known series of child pornography files, four of whom filed requests for restitution. PSR ¶¶ 23-29. The victims in those series were located by investigators throughout the world. One victim of Noble's conduct wrote, specifically for this case, "No one who has sexualized feelings and thoughts about minors should ever be placed in an authority position over them, and who is to say that it was any safer for him to coach college students?" ECF No. 50-1. That victim also wrote, "Imagine feeling like you are constantly living in a hypervigilant state, always on the lookout for danger. You desire connection with others, yet you fear what lurks in the shadows. . . ." The mother of another of Noble's victims wrote, "I urge you to ensure that justice is served for the victims of the water polo coach's alleged actions. We must send a clear message that such reprehensible actions will not be tolerated. . . ." ECF No. 50-2.

## III. PROCEDURAL HISTORY

A law enforcement team arrested Noble on May 19, 2022, and the Court issued a criminal complaint for distribution of visual depictions of minors engaged in sexually explicit conduct. ECF No. 1. The Court set conditions for Noble's release, including a $100,000 signature bond, with conditions including location monitoring, not accessing the internet, and not using or possessing a device capable of accessing the internet. ECF Nos. 6, 7. The Court, upon the parties' stipulations, modified and clarified some of those conditions during the duration of the case. ECF Nos. 21, 28, 37. The grand jury returned an indictment, alleging three counts of distribution of visual depictions of minors engaging in sexually explicit conduct. ECF No. 13. Noble's Instagram account was active during November of 2022 and again in July and August of 2023, leading to an investigation into contempt of a court order. PSR ¶ 7. Although the evidence from that investigation appeared to indicate that Noble had been accessing the internet in violation of his bond conditions (PSR ¶ 7), neither the government nor Pretrial Services moved to revoke his pretrial release status. PSR ¶ 3.

Noble entered a guilty plea, pursuant to a written agreement, on June 13, 2023. ECF No. 58. In the plea agreement, the government promised to recommend that Noble be sentenced to the low end of the applicable Sentencing Guidelines range of imprisonment. ECF No. 58 at 7.

The parties filed briefs addressing the issue of mandatory remand upon entry of guilty plea for the instant offense, which is a crime of violence. ECF Nos. 50, 54. After stating that it could not find exceptional circumstances in this case, the Court ordered Noble remanded to the custody of the United States Marshal pending sentencing. ECF No. 59. Noble challenged the remand order through an interlocutory appeal. ECF No. 61. After full briefing, the Ninth Circuit affirmed this Court's decision to detain Noble pending sentencing, holding, "[t]he district court did not abuse its discretion by concluding that, while Noble has done well on pretrial release, his circumstances are not 'exceptional.'" ECF No. 77.

## IV. SENTENCING GUIDELINES CALCULATION

### A. Sentencing Guidelines Calculations

The government agrees with the Sentencing Guidelines offense level calculations set forth in the Presentence Report. PSR ¶¶ 36-49. The base offense level is 22 (U.S.S.G. § 2G2.2(a)(2)). Several

specific offense characteristics apply, reflecting pre-pubescent minor (+2 levels, § 2G2.2(b)(2)), knowing distribution (+2 levels, § 2G2.2(b)(3)(F)), sadistic conduct (+4 levels, § 2G2.2(b)(4)), use of a computer (+2 levels, § 2G2.2(b)(6)), and well over 600 images (+5 levels, § 2G2.2(b)(7)(D)). After a three-level reduction under U.S.S.G. §3E1.1, the total adjusted offense level is 37. The resulting Sentencing Guidelines' suggested range of imprisonment is 151 to 188 months. In the plea agreement, the government promised to recommend that the Court impose the low end of the Guidelines' suggested imprisonment range. ECF No. 58 at 8.

### B. Criminal History / Prior Convictions

Noble has no prior criminal convictions, resulting in a criminal history score of 0 and category of I. The Government agrees with the Probation Department's criminal history computations. PSR ¶¶ 52-59.

### V. ANALYSIS OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

### A. The Nature and Circumstances of the Instant Offense Involve Trafficking in Child Sexual Abuse Materials, Causing Further Harm to the Victims Portrayed

This serious criminal offense involved Noble distributing, through a Kik messenger group, more than a dozen files depicting terrible sexual abuse and / or exploitation of young children. Congress recognizes the severity of this offense by providing for punishment between 5 and 20 years in prison. 18 U.S.C. § 2252(b)(1). Congress also directed the Sentencing Commission to revise the Guidelines for child pornography crimes at least nine times, usually requiring increasing the penalties. *See United States v. Henderson*, 649 F.3d 955, 960–64 (9th Cir. 2011) (summarizing the history of the Sentencing Guidelines for child pornography offenses, and recognizing that courts have discretion to vary from the Guidelines based upon a categorical policy disagreement with them). Noble was a fairly sophisticated trafficker of child pornography, using encrypted messaging platforms such as Kik and private groups to share videos of children enduring sexual exploitation and abuse. He was only caught when an undercover agent happened to gain access to the reprehensible private group devoted to videos of children being sexually abused.

The victim impact statements in this case highlight the ongoing harm that trafficking in visual depictions of child sexual abuse has on the survivors of that abuse. One victim explained, "I was only

seven when my predator began molesting me and photographing me. It went on for two years before they found him on the internet sending pictures of me to men. Then they found me after arresting him, but my life has never been the same. ECF No. 73-6 at 15. Counsel for a victim described the ongoing danger posed by consumers and traffickers of the videos of the victim being horrifically abused, who have displayed a very disturbing fascination with locating the victim. ECF No. 73-6 at 170–71. The mother of another victim described moving to a different state to escape messages being sent to the family containing the victim's child pornography images, and describes her daughter's stress, anxiety, and nightmares. ECF No. 73-6 at 220.

### B. Other than the Serious Crimes he Committed in 2022, Defendant's History and Characteristics Are Otherwise Positive

Defendant's history and characteristics are well covered in his sentencing memorandum, ECF No. 78. He has no prior criminal history, immediately acknowledged his role in the offense when law enforcement agents interviewed him, and has expressed remorse for his involvement in these crimes. PSR ¶¶ 53, 17–18, 31–34. Noble enjoys considerable support from his family, friends and water polo coaches, including those from UC Davis. ECF No. 71-1. Those supporters were shocked when they learned of Noble's crimes, and viewed them as out of character for the person they knew. ECF No. 71-1. He has a positive employment history, and is involved with his community. ECF No. 71-1.

### C. The Recommended Sentence Also Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Provides Just Punishment for the Offense

When imposing a sentence, courts must consider the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offenses. As explained above, the offense of distributing visual depictions of very young children being sexually abused is very serious and contributes to ongoing harm for the victims. The recommended sentence of 151 months in prison, which is the same sentence recommended by the United States Probation Office, should promote respect for the law, provide just punishment for the offense, and achieve the factors set forth in 18 U.S.C. § 3553(a)(2)(A).

### D. Avoiding Unwarranted Sentencing Disparities

Congress directs courts to consider "the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct." Noble's most compelling argument for a downward variance is his analysis of the three cases (Jennings, La Plante, and Pitsch) involving other active participants in the yungvidschilddd Kik group. ECF No. 78 at 13–15; 78-2 to 78–10. The government agrees with Noble that those three cases involve defendants with similar records who have been found guilty of very similar conduct. Government counsel is aware of no materially distinguishing circumstances in those three cases.

At Noble's counsel's request, government counsel identified other federal cases arising out of this yungvidschilddd undercover investigation, after speaking with the undercover FBI agent. Here is a table of the other federal cases from the yungvidschilddd investigation:

| Name | Jurisdiction | Case Number | Sentence |
|---|---|---|---|
| Tyler Bueter | SDOH | 1:23-cr-60-JPH | 210 months (2251) |
| Drew Lynn Jennings | MDPA | 3:22-cr-204-MEM | 84 months |
| Brian La Plante | SDFL | 1:22-cr-20184-KMW | 80 months |
| Benjamin Pitsch | WDLA | 2:22-cr-191-JDC | 87 months |

In the Bueter case, additional investigation revealed that he was also abusing a seven-year-old child, and he pleaded guilty to a sexual exploitation of a minor charge, receiving a prison sentence of 210 months. S.D. Ohio ECF No. 37, 38. That sentence is an outlier, since Bueter was convicted of a much more serious offense than trafficking in child sexual abuse materials. Therefore, the Bueter case is not similar to Noble's case, and should not be considered for sentencing disparity purposes.

As shown in the table above, and in the attachments to Noble's sentencing memorandum, the sentences for the other three active participants in the yungvidschilddd Kik group sentenced for non-production offenses ranged from 80 to 87 months. Because Congress directs courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," the Court is well within its discretion to compare Noble's case to the cases of Drew Jennings, Brian La Plante, and Benjamin Pitsch, and determine whether a similar sentence is warranted. This factor weighs in favor of a downward variance for Noble, to avoid unwarranted sentence disparities among similarly situated defendants.

//

### E. The Recommended Sentence Will Also Deter Criminal Conduct and Protect the Public from Future Crimes by Defendant

In addition to the factors already analyzed, the government's recommended sentence will provide specific and general deterrence to further criminal conduct. The recommended sentence will send a message to others that trafficking in vile depictions of young children being exploited and abused will be appropriately punished. Noble's experience being prosecuted for this serious offense should specifically deter him from future similar conduct. PSR ¶ 34.

### F. Providing Restitution to Victims of the Offenses

The government received a restitution request with supporting documents from four victim in this case. The rest of the victims did not submit a request in this case. The government agrees with Probation's recommended $5,000 restitution award for each of the victims, totaling $20,000. PSR ¶¶ 25–29, 100, and Restitution Attachment. The recommended sentence, including the $20,000 in restitution, satisfies the statutory sentencing goal of providing restitution to the victims of Noble's offenses.

### G. A Sentence Sufficient, but not Greater than Necessary to Comply with Statutory Goals

Congress directs courts to impose a sentence sufficient, but not greater than necessary, to comply with the goals it set forth in 18 U.S.C. § 3553(a). The government defers to the Court on addressing this directive, recognizing that a sentence similar to the 80- to 87-month sentences imposed for the other three defendants convicted of actively participating in the yungvidschilddd Kik group might be warranted under the circumstances of this case.

## VI. JUSTICE FOR VICTIMS OF TRAFFICKING ACT (JVTA) ASSESSMENT

The Justice for Victims of Trafficking Act (JVTA) of 2015 created a mandatory $5,000 special assessment that applies to non-indigent defendants for each count of conviction of certain offenses, including 18 U.S.C. § 1591. 18 U.S.C. § 3014. The assessment has been extended multiple times by Congress, most recently through Pub. L. 117–347, title I, § 105(c), Jan. 5, 2023, 136 Stat. 6204. The assessment funds shall be used to award grants that may be used for the provision of health care or medical items or services to victims of trafficking. 18 U.S.C. § 3014(h)(2). This assessment is paid

after victim restitution has been fully paid.

In *United States v. Shepherd*, 922 F.3d 753 (6th Cir. 2019), the Sixth Circuit, collecting cases on this issue from several sister circuits, held that: (1) receiving court-appointed counsel does not equate to indigency; and (2) courts may consider future earnings in assessing indigency. *Id.* at 757-59. The *Shepherd* court also found that the district court did not err in finding a defendant non-indigent despite his limited earning potential, negative net worth of $1,739, and $55,000 in restitution and child support obligations. *Id.* at 756, 760. Other published cases evaluating the applicability of the JVTA special assessment hold that it is appropriately applied where a defendant fails to meet his burden to show that he cannot pay that amount in the future. *See United States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2018); *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017). An able-bodied person can pay down the assessment in installments over a period of years. *See United States v. Strange*, 692 F. App'x 346, 349 (9th Cir. 2017) (unpublished).

The Court should impose the $5,000 JVTA assessment because Noble has failed to meet his burden to show that he will be unable to pay it. *See United States v. Mung*, 989 F.3d 639, 645 (8th Cir. 2021). After his arrest in this case, Noble retained counsel and lived in a 3,800 square foot house that Zillow estimates to be worth over $1.2 million. *See* Pretrial Services Report at 3. Noble is healthy, in his late 20s, has a high school degree and has taken college courses. PSR ¶¶ 65, 77. He benefits from substantial support from his family and friends. PSR ¶ 64. Noble worked consistently from 2015 through his arrest. PSR ¶¶ 80-83. He will be able to earn money through the inmate financial responsibility program, and will have decades to work after his release from custody. However, in this case, in light of the restitution and JVTA assessment, the government does not recommend the imposition of a fine or an additional discretionary assessment under 18 U.S.C. § 2259A(a)(2).

### VII. RESPONSE TO PSR OBJECTIONS

Noble filed three objections to the final Presentence Report. ECF No. 75. The government does not oppose the first objection: to modify paragraph 3 to reflect that the government is prepared to prove that 16 of the videos Noble shared meet the statutory definition of visual depictions of minors engaging in sexually explicit conduct. 18 U.S.C. § 2256. For the reasons explained above, the government opposes Noble's objection to the JVTA assessment; he failed to establish that he is indigent and will be

unable to pay the assessment in the future. For Noble's final objection, the government does not object to changing paragraph 32 to read, "eventually led to" instead of "quickly spiraled."

### VIII.　CONCLUSION

For all of the foregoing reasons, the government asks the Court to impose a prison sentence that satisfies the Section 3553(a) factors, to be followed by 10 years of supervised release, with the conditions recommended by the Probation Office, including registration as a sex offender under California law, $20,000 in victim restitution, and a $5,100 special assessment (incorporating the mandatory assessments under 18 U.S.C. §§ 3013 and 3014).

Dated:  September 19, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ CHRISTINA McCALL
CHRISTINA McCALL
Assistant United States Attorney